GUIDRY, Judge.
Plaintiff, O’Brien Flying Service, Inc., a Louisiana corporation domiciled in Jefferson Davis Parish, sued defendants, Melvin Bell, Melvin R. Bell, and Harold Scott Mills, Jr. on a Thirty-five Thousand Dollar ($35,-000.00) promissory note dated September 22, 1978. The aforesaid note is signed by defendants as makers and is made payable to the order of plaintiff on or before November 30, 1978 and bears 9ViWo per annum interest. Defendants filed an answer alleging lack of consideration for the aforesaid note, and in addition, filed a reconventional demand individually and on behalf of Bell Flying Service, Inc. in which they alleged that O’Brien Flying Service, Inc., Zoren O’Brien, and Phillip Miller are indebted to reconvenors in the sum of Two Hundred Twenty-eight Thousand and Twenty-five Dollars and eighteen cents ($228,025.18).[1] In the alternative, reconvenors prayed for a credit as a set-off for any amounts adjudged due on the subject promissory note. Thereafter, defendants-in-reconvention, O’Brien Flying Service, Inc., Zoren O’Brien *965 and Phillip Miller filed an answer to re-convenors’ demand coupled with a third party demand against Melvin Bell alleging that Melvin Bell, pursuant to an indemnity and hold harmless agreement executed by Bell in favor of O’Brien and Miller, is responsible for all amounts due should plaintiffs-in-reconvention be successful in their action. Additionally, defendants-in-recon-vention filed a peremptory exception of no cause of action in response to reconvenors’ demand contending that the aforesaid indemnity and hold harmless agreement executed by Bell in favor of Miller and O’Brien precludes Bell’s reconventional demand. It was stipulated at trial that the aforesaid exception would be referred to the merits. On the date of trial, defendants-in-recon-vention made an oral exception of no cause of action as to the reconvenors’ demand based upon a document titled “Stockholders Unanimous Consent Agreement” and an alleged compromise settlement between the parties which was also referred to the merits.
After a prolonged trial of the matters, the district court, assigning written reasons for judgment, ordered that both the original demand and all incidental demands be dismissed with cost of the proceedings to be shared equally by the parties. Plaintiff, defendants and Bell Flying Service, Inc. have appealed the judgment of the trial court. Zoren O’Brien and Phillip W. Miller did not appeal nor did they file an answer to the appeals.
FACTS
On or about January, 1975, Zoren O’Brien and Phillip Miller formed a corporation, in which they were the only stockholders, named O'Brien Flying Service, Inc. (hereafter O’Brien, Inc.) located in Iowa, Louisiana. Shortly thereafter, on January 24, 1975, O’Brien, Miller and Melvin Bell incorporated a business known as O’Brien-Bell Flying Service, Inc. (hereafter O’Brien-Bell) located in Kinder, Louisiana. O’Brien, Miller and Bell were the only stockholders in O’Brien-Bell. Both of the aforesaid corporations were engaged in the business of aerial applications or “crop-dusting”. The record reflects that the two corporations were closely associated and frequently utilized the same equipment, personnel, and supplies. Miller served as bookkeeper for both businesses.
During the Spring of 1978, Miller and O’Brien decided to divest themselves of their stock in O’Brien-Bell. Negotiations were thereafter instituted among Miller, O’Brien and Melvin Bell regarding Bell’s purchase of Miller’s and O’Brien’s stock in O’Brien-Bell. The Articles of Incorporation of O’Brien-Bell contained a provision granting preemptive rights to its stockholders, thus, Melvin Bell possessed the right to purchase the aforesaid shares of stock prior to such stock being offered for sale to non-shareholders. Testimony at trial indicates that the majority of the negotiations relative to Melvin Bell’s purchase of O’Brien’s and Miller’s stock were conducted between Bell and Miller. The result of these negotiations is evidenced by a document introduced into evidence at trial and denoted as “Stockholders Unanimous Consent Agreement” dated September 22,1978, which provides as follows:

“CALCASIEU PARISH STOCKHOLDERS UNANIMOUS CONSENT AGREEMENT

STATE OF LOUISIANA

WE the undersigned, being ail the shareholders of O’Brien-Bell Flying Service, Inc., do hereby make the following unanimous agreement.

Whereas the undersigned stockholders were the original incorporators of this corporation and also have always been the sole and only stockholders thereof, we do hereby waive any restrictions upon alienation of shares of stock for the purpose of confecting a sale of stock, which has been agreed upon by all the stockholders and the terms of which are as follows:

Zoren Oren O’Brien agrees to sell to Melvin Bell his 500 shares of stock in this corporation and Melvin Bell agrees to purchase same for the sum of $50.00 per share or a total price of $25,000.00.

Further, Phillip W. Miller agrees to sell to Melvin Bell his 500 shares of stock in 
*966
this corporation and Melvin Bell agrees to purchase same for the sum of $50.00 per share or a total price of $25,000.00.

As a further consideration of this transfer the pruchaser (sic) Melvin Bell hereby agrees that he will assume any personal liability or indebtedness as surety or otherwise which Phillip W. Miller and Zoren Oren O’Brien may have related to this corporation and the said Melvin Bell agrees to indemnify and hold harmless the said Zoren Oren O’Brien and Philip (sic) W. Miller from any indebtedness associated with this corporation.

It is further agreed that this sale shall be confected and completed within 30 days from the date of this instrument and should the purchaser, Melvin Bell, default and/or fail or refuse to confect this sale in its full terms within 30 days from the date of this instrument, then Zoren Oren O’Brien and Philip (sic) W. Miller shall have the right to offer their shares of stock to any prospective purchaser, and any previous restraints upon alienation thereof are fully waived.

It is further agreed by the stockholders that 0‘Brien-Bell Flying Service, Inc., is indebted presently unto O’Brien Flying Service, Inc. in the full legal sum of $35,-000.00 for labor, materials and services and to secure payment of this sum O’Brien-Bell Flying Service, Inc. through its President, shall execute in favor of O’Brien Flying Service, Inc., a promissory note in the sum of $35,000.00, payable at 9¥¿% interest in whole or in part on or before November 30, 1978, with payment in full no later than April 30,1979.”

On the same date, September 22, 1978, the promissory note sued on was executed by Melvin Bell, Melvin R. Bell, and Harold Scott Mills, Jr. in favor of O’Brien Flying Service, Inc. It is plaintiff’s contention that this promissory note is the one contemplated by the “Unanimous Stockholders Consent Agreement” and formed an integral part of the negotiations regarding Melvin Bell’s purchase of the stock of O’Brien-Bell.
The record reflects that Melvin Bell planned to purchase O'Brien's and Miller's shares of stock, and thereafter, such shares would be sold by Bell to defendants, Melvin R. Bell and Harold Scott Mills, Jr., who would then become equal shareholders with Melvin Bell in O’Brien-Bell.[2] Melvin testified that he paid $25,000.00 in cash to O’Brien for his stock and executed a $25,-000.00 promissory note in favor of Miller as payment for his interest in O’Brien-Bell.
There is extensive testimony regarding the circumstances leading to the execution of the $35,000.00 promissory note, which forms the basis of the instant dispute, much of it in direct conflict. Harold S. Mills, Jr. testified that at the time he signed the disputed note, he did so with the understanding that the note would be a pledge to the bank and used as collateral by O’Brien, Inc. He stated that he signed the note solely to expedite the resolution of the negotiations regarding the sale of O’Brien-Bell to Melvin Bell. In effect, Mills testified that the note sued on was not given for consideration but solely to accommodate O’Brien, Inc. Melvin R. Bell testified similarly, stating that he did not owe O’Brien, Inc. nor any of its shareholders any money, but rather, signed the note to «accommodate O’Brien, Inc.’s collateral needs. In addition, Melvin R. Bell stated that even after becoming a shareholder in O’Brien-Bell, he never authorized Melvin to pay $35,000.00 or any other sum to O’Brien, Inc.
Melvin testified that the promissory note at issue was executed merely as a pledge for use as collateral by O’Brien, Inc. and is not the promissory note contemplated in the “Unanimous Stockholders Consent Agreement”. Melvin testified that the note referred to in the aforesaid agreement was never executed. Melvin also testified extensively regarding alleged debts for serv *967 ices rendered owed by O’Brien, Inc. to Mm, personally, and to O’Brien-Bell. Melvin Bell’s testimony demonstrates the close association of the two corporations and the frequent interchange of services, materials, and equipment between the two businesses.
In contrast to the aforementioned witnesses, Zoren O’Brien and Phillip Miller both testified that the promissory note sued upon is the note referred to in the “Unanimous Stockholders Consent Agreement”. In this regard, O’Brien stated that at the time of the stock purchase negotiations, the parties discussed at length the various debts owed by O’Brien-Bell to O’Brien, Inc. O’Brien testified that as a result of such discussions, the parties agreed that Melvin Bell would pay $50,000.00 for O’Brien’s and Miller’s stock in O’Brien-Bell and in addition, O’Brien-Bell would pay the sum of $35,000.00 to O’Brien, Inc. in settlement of debts owed by the former to the latter corporation. O’Brien’s testimony refuted Melvin’s allegations concerning debts owed by O’Brien, Inc. to Melvin, personally, as well as that corporation’s alleged debts to O’Brien-Bell. O’Brien’s testimony regarding the debts and liabilities existing between the two corporations was essentially in direct conflict to Melvin’s testimony. In sum, O’Brien stated that O’Brien, Inc. owes neither Melvin Bell, nor O’Brien-Bell any money, but rather, O’Brien-Bell is indebted to O’Brien, Inc. in the sum of $35,000.00 pursuant to an agreement between the parties.
Phillip Miller stated at trial that he maintained the financial records of both corporations. He testified that at the end of the fiscal year adjustments were made on the books of the two businesses to determine which corporation owed what amounts to the other. His testimony reiterated the extensive involvement of each corporation in the other’s operations. Miller also stated that it was ultimately agreed upon by O’Brien and Melvin that O’Brien-Bell would pay to O’Brien, Inc. the sum of $35,000.00 in settlement of certain debts and that an adjustment was made in the books of the two businesses to reflect their agreement. Miller stated that the $35,000.00 promissory note at issue was executed by Melvin Bell and Melvin’s prospective business associates in satisfaction of the aforesaid settlement.
Patrick Reddin, a certified public accountant and partner in the CPA firm handling the accounts of both corporations testified that he was informed by Miller that an agreement had been reached between the parties whereby O’Brien-Bell’s obligation to O’Brien, Inc. would be reflected in the books of the corporations as $35,000.00. Reddin admitted that the figures which he employed in maintaining the aforesaid corporate accounts were derived from information supplied to him by Miller.
Finally, Raymond Aucoin, vice-president of Gulf National Bank, testified that O’Brien, Inc. had a $250,000.00 line of credit at his bank and that, at the time in question, O’Brien, Inc. had utilized only $180,-000.00 of such credit. Aucoin stated that the bank had not requested any additional collateral from O’Brien, Inc. However, Au-coin admitted that it is banking practice to accept any additional collateral offered by its clients. Aucoin further stated that the promissory note at issue was maintained by Gulf National Bank in the collateral portfolio of O’Brien, Inc.
ISSUES
(1) Did the trial court err in concluding that the promissory note sued upon was executed by defendants for the sole purpose of maintaining O’Brien, Inc. with adequate collateral, and accordingly, such note is unenforceable by plaintiff due to a want or failure of consideration?
(2) Did the trial court err in dismissing defendants’ reconventional demand?
Plaintiff contends that it is a holder in due course of the promissory note sued upon, in that, O’Brien, Inc. took the instrument for value, in good faith and without notice that it was overdue or had been dishonored. In this regard, plaintiff urges that the note was executed in conjunction with the document entitled “Unanimous Stockholders Consent Agreement”, and was *968 given in settlement of debts owed by O’Brien-Bell to O’Brien, Inc. In contrast, defendants contend that the note was executed solely to accommodate the collateral needs of O’Brien, Inc.
The trial court, after reviewing voluminous testimony and extensive documentary evidence, concluded that “the execution of the note was for the sole purpose of keeping O’Brien Flying Service with adequate collateral.” The trial court further reasoned that as between the defendants-makers of the note and the plaintiff-payee there exists a total want or failure of consideration, thus, plaintiff cannot be a holder in due course of the note sued upon.
The trial court’s conclusion is supported by the language of the “Unanimous Stockholders Consent Agreement” wherein it is agreed that “... O’Brien-Bell Flying Service, Inc. through its President, shall execute in favor of O’Brien Flying Service, Inc., a promissory note in the sum of $35,-000.00, payable at 9V2% interest in whole or in part on or before November 30, 1978, with payment in full no later than April 30, 1979.” (Emphasis ours)
Although the promissory note sued on is consistent in some particulars with the note contemplated in the aforesaid agreement, it differs in one extremely important aspect. The stockholders agreement provides that the note shall be executed on behalf of O’Brien-Bell through its President. The note sued upon is signed by Melvin Bell, Melvin R. Bell, and Harold Scott Mills, Jr. with no indication that the note was signed by the makers in any representative capacity. In addition, the record clearly reflects that at the time the instrument was executed, neither Mills nor Melvin R. Bell owned any interest in O’Brien-Bell nor did they owe any monies whatsoever to O’Brien, Inc. With the exception of the self-serving testimony of O’Brien and Miller, the record is devoid of any evidence establishing that either of the aforesaid defendants received any consideration for their signatures on the disputed instrument. Additionally, there is no indication that Melvin Bell signed the disputed note as part of the purchase of stock agreement between he and O’Brien and Miller. Rather, Bell testified that the note contemplated in the stockholders agreement was never executed.
The trial judge, in his written reasons for judgment, clearly indicates that he found the testimony of the defendants and the evidence presented on their behalf more credible than that presented by plaintiff. Accordingly, the trial court concluded that the note sued upon was unenforceable for failure of consideration.
It is well settled that a decision of the trier of fact, which is based upon conclusions drawn from the facts and a credibility evaluation of the witnesses, cannot be reversed by a Court of Appeal if the record supports the reasonable inferences of fact and reasonable evaluations of credibility made by the trial court. Nash v. La Fontaine, 407 So.2d 783 (La.App. 4th Cir.1981); Canter v. Koehring Co., 283 So.2d 716 (La. 1973). After carefully reviewing the record, we discern no manifest error on the part of the trial court in its conclusions.
The final issue for consideration is whether or not the trial court erred in dismissing defendants’ reconventional demand. Reconvenors, Melvin Bell, Melvin R. Bell, Harold Scott Mills, Jr., and Bell Flying Service, Inc. contend that defendants-in-re-convention, Zoren O’Brien, Phillip Miller and O’Brien, Inc. are indebted to them in the sum of $228,025.18. In this regard, reconvenors aver that the aforesaid debt is the consequence of various overcharges, unpaid wages, unpaid airplane leases, and unauthorized withdrawals from the accounts of O’Brien-Bell.
In dismissing reconvenors’ demand, the trial judge concluded that the defendants simply failed to establish by a preponderance of the evidence that the defendants-in-reconvention are indebted to reconvenors in any amount whatever.
Our review of the record reveals considerable testimony by all parties and their witnesses which establishes the extensive involvement of both corporations in the oper *969 ations of the other. The exchange of services, personnel, equipment, and supplies between the two businesses was commonplace. Such a comprehensive interchange of the corporations’ resources and assets makes the resolution of reconvenors’ demand extremely difficult, if not impossible. O’Brien, Miller and Melvin Bell testified at length regarding various sums due by one corporation to the other. The testimony of Miller and O’Brien regarding such debts is completely irreconciable with that of Melvin Bell.
After a careful evaluation of the testimony and documentary evidence received at trial, we conclude that the trial court did not commit clear error in its determination that reeonvenors failed to sustain their burden of proof regarding defendants-in-recon-ventions’ alleged indebtedness to them. See Canter v. Koehring, supra.
For the above and foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed one-half to plaintiff, O’Brien Flying Service, Inc., and one-half to defendants, Melvin Bell, Melvin R. Bell, and Harold Scott Mills, Jr.
AFFIRMED.

. Although this pleading is styled as a “Supplemental Answer and Reconventional Demand”, it was considered by the trial court as a petition of intervention, insofar as it relates to Bell Flying Service, Inc. and insofar as it joins Zo-ren O. O’Brien and Phillip W. Miller as defendants.

. The record reflects that on October 2, 1978, the Articles of Incorporation of O’Brien-Bell Flying Service, Inc. were amended so as to change the name of the aforesaid corporation to Bell Flying Service, Inc. At the time of trial, Harold Scott Mills, Jr. was no long a shareholder in Bell Flying Service, Inc.